IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN OSANITSCH,

    Plaintiff,

v.

MARCONI PLC et al.,

    Defendant.

No. CV 05-3988 CRB

**ORDER GRANTING SUMMARY JUDGMENT**

Plaintiff John Osanitsch brings this suit alleging breach of an employment contract by Defendants Marconi PLC, Marconi Acquisition Sub, Inc., Marconi Communications, Telephon AB L.M. Ericsson, and Telent, Ltd. ("Defendants"). Plaintiff alleges that Defendants violated the terms of his employment agreement by reassigning him several times to positions associated with "a reduction in force and a decrease in responsibility" despite the agreement specifying that Plaintiff would "continue employment in an executive position consistent with his skills." Compl. ¶ 73. Now pending before this Court is Defendants' motion for summary judgment. Upon Plaintiff's resignation, he waived and released his rights to bring any lawsuit in connection to his employment with Defendants by signing and executing an Employee Separation Agreement and General Release ("General Release") in exchange for a severance package. Mot. at 1. No genuine issue of material fact exists as to the enforceability of the General Release. Therefore Defendants' motion for

summary judgment is GRANTED.

## PROCEDURAL HISTORY

This is a dispute about an employment agreement and severance benefits awarded to Plaintiff when his former employer fell upon hard times. This Court previously dismissed Plaintiff's complaint, holding that his claims were barred by an injunction issued by a New York Bankruptcy Court. Plaintiff appealed. While the appeal was pending, Plaintiff sought clarification of the scope of the injunction with the Bankruptcy Court. The Ninth Circuit subsequently vacated this Court's dismissal and remanded. In November 2008, this Court held that the Bankruptcy Court had modified the scope of its injunction so that Plaintiff could proceed on his claim. Plaintiff then filed an Amended Complaint alleging five claims for: (1) fraud and deceit; (2) negligent misrepresentation; (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; and (5) wrongful discharge. Defendants moved to dismiss the complaint and on March 20, 2009, this Court dismissed all but the breach of contract claim as barred by the applicable statute of limitations. On September 18, 2009, Defendants filed the instant motion for summary judgment.

## BACKGROUND

In the year 2000 Plaintiff was an employee of Mariposa Technology, Inc. ("Mariposa"), a telecommunications carrier headquartered in Petaluma, CA. Compl. ¶ 15. As the Executive Vice-President for Advanced Technical and Business Development, Plaintiff earned a base salary of $170,000 a year, and was entitled to the grant upon vesting of 150,000 founders' shares in the company in addition to other shares and options. Id. In total, Plaintiff owned the rights to 300,000 Mariposa shares with a market value of approximately $4,800,000 as of October 2000. Id.

In October 2000, Mariposa merged with Defendant Marconi PLC ("Marconi"). See Exhibit ("Ex.") A to the Declaration of Jas S. Dhillon in Support Of Defendants' Motion for Summary Judgment ("Dhillon Decl.") at 26:6-9, 29:23-30:10. As part of the merger, Plaintiff entered into a written Employment Agreement with Marconi. See Ex. A to Dhillon Decl. at 39:14-21; 40:20-41:21; see also Employment Agreement, Ex. B to Dhillon Decl.

Under the Employment Agreement, Plaintiff was entitled to continued employment with the merged entity for a minimum term of three years, an annual base salary of $170,000 per year, a sign-on bonus of $100,000 payable over two years, an annual bonus, 90,625 matching shares of Marconi stock, and 150,000 additional shares of restricted Marconi stock. See Employment Agreement at § 3, Ex. B to Dhillon Decl. In addition to the compensation package, Plaintiff was also entitled under the Employment Agreement to an executive position "consistent with his skills" for the duration of the agreement. Id.

Plaintiff was initially assigned the position of Platform Group Director of the Integrated Access Devices division. See Ex. A to Dhillon Decl. at 30:17-19; 38:16-39:2. Soon after, Plaintiff was promoted to the position of Vice President of Strategic Marketing and received an increase in salary from $170,000 to $206,000 per year. Id. at 72:10-24, 74:12-24. While Plaintiff was serving in this capacity, Marconi began implementing various cost-cutting measures. Id. at 78:7-9; 81:4-16. In March 2001, Plaintiff was forced to lay off roughly 75% of the employees that worked for him. Id. In April 2001, Marconi went through a companywide reorganization and Plaintiff was nominated to the Global Executive Team, an honor bestowed on the top 1% of employees at Marconi. Id. at 84:5-8; see also Letter from John Mayo, Ex. C to Dhillon Decl.

In May 2001, Plaintiff began receiving financial reports from his personal investment manager warning him of Marconi's "frail near-term outlook." See Emails from Eric Miller to Plaintiff, Ex. N to Dhillon Decl. These reports generated by Lehman Brothers informed Plaintiff of Marconi's "weaker balance sheet and operating cash flow [relative to] most of its peers," that Marconi's "credit rating at Moodys [was] on the negative outlook," and that the overall risk profile of Marconi had increased. Id. at 4. In July 2001, Marconi suspended trading of company stock and the price of Marconi stock consequently fell from approximately four dollars per share to less than one dollar per share. Ex. A to Dhillon Decl. at 82:14-22. Two days later, the Deputy Chief Executive of Marconi resigned. Id. at 155:12-21.

By August 2001 Marconi had lost nearly 99% of its market share and Plaintiff began to realize that Marconi would not likely overcome its financial difficulties. Id. at 81:23-82:9; 162:1-19; 163:19-164:6; 282:4-9; see also Compl. ¶ 34. In November 2001, Plaintiff was notified that Marconi would be shutting down its Petaluma, CA facility in which Plaintiff maintained his office. Ex. A to Dhillon Decl. at 80:2-17; 224:24-225:5. Plaintiff was then offered the position of Vice President of Solutions in which he would work under a supervisor whom Plaintiff believed was unqualified and inexperienced. See Ex. A to Dhillon Decl. at 165:8-168:3. Shortly thereafter Plaintiff submitted his resignation in the form of a Notice Letter of Termination ("Notice Letter") to Marconi. Id. at 280:18-281:5; see also Notice Letter, Ex. D to Dhillon Decl.

After receiving Plaintiff's Notice Letter, Marconi and Plaintiff began negotiating his General Release. Id. at 173:19-174:16. Plaintiff exchanged numerous emails and phone calls with Marconi between November 27 and December 20, 2001 to negotiate the terms of his General Release. Id. at 176:7-10, 179:12-16. During negotiations, Marconi advised Plaintiff to consult his own independent legal counsel. Id. at 180:10-181:1. After retaining counsel, Plaintiff negotiated various terms of the agreement, including requesting Marconi to remove provisions that would waive Plaintiff's rights to bring a future lawsuit related to his employment. Id. at 194:20-195:4. Marconi, however, refused to remove the waiver and general release provisions. Id. at 194:1-15; 193:1-9. Plaintiff received a draft of the General Release no later than December 17, 2001 and was not given a deadline by which to execute it. Id. at 178:10-18; 200:10-18; 304:11-25. On December 20, 2001, Plaintiff signed and executed the General Release which included the provisions releasing and waiving Plaintiff's rights to bring a lawsuit against Marconi in the future. Id. at 190:15-192:11; 201:6-22; see also General Release §§ 3,4,6,9,20, Ex. F to Dhillon Decl.

Marconi has satisfied all of its obligations under the General Release including: (1) paying the remainder of Plaintiff's $50,000 merger sign-on bonus; (2) paying Plaintiff's monthly salary until October 17, 2003; (3) paying Plaintiff's healthcare premiums until October 17, 2003; and (4) releasing all of Plaintiff's unvested stock. Ex. A to Dhillon Decl.

at 192:12-25. In January 2002, Marconi closed its Petaluma, CA facility and in March 2003, Marconi filed for bankruptcy. Id. at 224:16-21.

**LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A fact issue is "material" only if it could affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A principal purpose of the summary judgment procedure is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 323-24. To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. See id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n., 809 F.2d 626, 630-31 (9th Cir. 1987).

**DISCUSSION**

Plaintiff alleges that Defendants violated the terms of their Employment Agreement by reassigning Plaintiff several times to positions associated with "a reduction in force and a decrease in responsibility" despite the agreement specifying that Plaintiff would "continue employment in an executive position consistent with his skills" for the duration of the

agreement. Compl. ¶ 73. Defendants argue that summary judgment is warranted because: (1) Plaintiff waived and released all rights to bring this action by executing an employee separation agreement and general release; (2) Plaintiff's breach of contract claim depends on an incorrect interpretation of the Employment Agreement, which is an issue of law; and (3) Plaintiff cannot prove any recoverable damages stemming from his breach of contract claim. This Court agrees that there is no genuine issue of material fact as to the efficacy of the general release, and that Plaintiff is therefore foreclosed from pursuing his breach of contract action. Because this issue is dispositive, this Court does not reach Defendants' other arguments.

I. Enforceability of the General Release

The General Release signed and executed by Plaintiff on December 20, 2001 included the following provisions:

> 4. <u>General Release of Claims</u>
>
> (a) In consideration of the benefits provided to [Plaintiff] as set forth above, and intending to be legally bound hereby, [Plaintiff] . . .
> (i) agrees that [Plaintiff's] receipt of the benefits as set forth above is in full settlement of any and all claims which [Plaintiff] and Reasons have or may have had against the [Defendants] as a result of [Plaintiff's] employment with and departure from employment with Marconi; and
> (ii) hereby ABSOLUTELY AND IRREVOCABLY AND UNCONDITIONALLY RELEASES AND FOREVER DISCHARGES MARCONI . . . from any and all rights, claims, demands, controversies, damages, costs, expenses, compensation, causes of action, suits, obligations, judgments, promises, administrative claims, actions or proceedings, executions and liabilities of every kind and character whatsoever (including attorneys' fees and costs), known or unknown, asserted or unasserted, suspected or unsuspected, in law or in equity, whether the claims are past or present, whether they arise from common law or statute, whether now apparent or yet to be discovered or which may hereafter develop based on events that have transpired from the beginning of time to the effective date of this [General Release], and whether or not an action, claim, complaint or charge has been filed by [Plaintiff] under any federal, state or local statute, regulation, ordinance, order, rule or common law theory (hereinafter "claims") . . . .

General Release § 4, Ex. F to Dhillon Decl. The General Release also provided:

> 3. <u>Acknowledgment of Complete and Adequate Consideration</u>
> . . . [T]hat [Plaintiff] accepts the consideration set forth in paragraph 2(a) of this Agreement as adequate and full, final, and complete settlement of all possible claims which he/she might have as described in paragraph 4 of this Agreement. [Plaintiff] expressly understands and agrees that MARCONI shall not be required to make any further payment, for any reason

6

whatsoever, to him/her or to any person regarding any claim or right whatsoever which might possibly be asserted by [Plaintiff] or on [Plaintiff's] behalf. [Plaintiff] also agrees that, under MARCONI's policies and procedures, [Plaintiff] is not entitled to receive the benefits set forth in paragraph 2(a) of this Agreement and that [Plaintiff] would not receive those benefits but for his/her entering in to this Agreement . . . .

6. Waiver
. . . [Plaintiff] acknowledges that by virtue of the execution of this [General Release], [Plaintiff] hereby waives any relief to which [Plaintiff] may be entitled, no matter how characterized, including, but not limited to, wages, commissions, stock options, benefits, back pay, front pay, compensatory damages, punitive damages, damages for mental anguish, loss of enjoyment of life, pain or suffering and costs or attorneys' fees. Further, [Plaintiff] covenants that [Plaintiff] has not initiated any lawsuit of any kind against MARCONI. [Plaintiff] waives the right to any benefit from any claim, proceeding or lawsuit, if any, filed by [Plaintiff] or on [Plaintiff's] behalf with any federal, state, or local agency or court in connection with [Plaintiff's] employment by MARCONI or as a result of [Plaintiff's] departure from employment with MARCONI, provided that this waiver does not waive any rights or claims that may arise after the effective date of this Agreement . . . .

20. Covenant Not to Sue
[Plaintiff] covenants and agrees that he/she will never institute a claim or sue any of the [Defendants] concerning any facts or events relating to employment with MARCONI or the [Defendants] which have occurred as of the effective date of this Agreement . . . .

Id. at §§ 3, 6, 20.

Plaintiff argues that the General Release is unenforceable because Plaintiff was under economic duress at the time he signed and executed it. Opp. at 10-15. Plaintiff further asserts that existence of duress is a factual issue that should be decided by a jury and not adjudicated on motion for summary judgment. Id. at 12-15.

Under California law, a finding of duress would indeed undermine the enforceability of the general release. Skrbina v. Fleming Companies, Inc., 45 Cal. App. 4th 1353 (1996). Economic duress applies only in circumstances where the perpetrator commits "a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure." Myerchin v. Family Benefits, Inc., 162 Cal. App. 4th 1526, 1539 (2008) (citing Rich & Whillock, Inc. v. Aston Dev., Inc., 157 Cal. App. 3d 1154, 1158-59 (1984)). We now turn to two of the Myerchin

factors: whether Defendants committed a wrongful act, and whether Plaintiff has no reasonable alternative.

### A. Wrongful Act

As to the first prong, "[t]he assertion of a claim known to be false or a bad faith threat to breach a contract or to withhold a payment may constitute a wrongful act for purposes of the economic duress doctrine." Rich & Whillock, Inc., 157 Cal. App. 3d at 1159. Plaintiff's Opposition does not directly address this requirement. The only allegation on which Plaintiff appears to rely is that "Marconi well knew when [Plaintiff] signed its [General Release] . . . that he needed the money which it offered, and Marconi freely used its economic leverage to extract non-compete terms that it refused to define and for which it offered no legal consideration." Opp. at 14-15.

Plaintiff's argument is deficient for two reasons. First, the fact that a plaintiff feels economic pressure to sign an agreement does not raise any inferences about a defendant's conduct, much less their wrongful conduct. Kinghorn v. Citibank, N.A., 1999 WL 30534, at *6 (N.D. Cal. Jan. 19, 1999). Second, the General Release does not in fact include a non-competition provision. See General Release, Ex. F to Dhillon Decl. Although emails from Marconi's in-house counsel reflect the fact that the original Employment Agreement contained a non-compete clause, see Opp. at 14 n.4., the General Release clearly superseded all previous agreements, including the Employment Agreement. See General Release § 22, Ex. F to Dhillon Decl.

This Court concludes that Defendant has not provided evidence to support a finding that Marconi committed a wrongful act. On the contrary, Marconi engaged in lengthy negotiations with Plaintiff, and advised him to obtain independent counsel. Plaintiff further received valuable consideration in exchange for signing the release. For example, Plaintiff's stock options were vested at an accelerated rate. Had the vesting not been accelerated, those options would in all likelihood have been worthless. Moreover, Plaintiff was paid out for the duration of his contract, despite the fact that he was no longer

obligated to work. There is nothing wrongful about offering a generous severance package in exchange for a release of claims.

Plaintiff disputes this, arguing instead that Plaintiff was already "entitled" to such compensation, and that Marconi essentially received the release without providing any valuable consideration. However, Marconi disputes Plaintiff's interpretation of the original employment contract, and Plaintiff would only be "entitled" to the full balance of the employment contract if a court ultimately agreed with him. In exchange for his general release, Plaintiff was able to avoid the cost and stress of litigation, and more importantly avoid the possibility that the court would not adopt his interpretation. These are things of value. Marconi was by no means "obligated" to give up without a fight, which is what Plaintiff received in exchange for his general release. Marconi's requirement that it receive something of value – the release – in exchange for its payment of Plaintiff's salary and the accelerated vesting of his options is by no means the sort of wrongful act that California courts have recognized. Without such a wrongful act, there can be no economic duress.

B. Reasonable Alternatives

With respect to the second prong, the "wrongful act [must be] sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure." Rich & Whillock, Inc., 157 Cal. App. 3d at 1159 (emphasis added). Defendants point out five other options that Plaintiff had available to him. Reply at 3. First, Plaintiff could have stayed employed at Marconi and continued to receive his salary and benefits. See Ex. A to Dhillon Decl. at 165:4-168:12. Indeed, Plaintiff resigned on his own accord. Id. Second, Plaintiff could have quit and filed a lawsuit for his breach of contract claim. Third, Plaintiff could have remained employed and filed a lawsuit. Fourth, Plaintiff could have quit and obtained another job. Plaintiff has identified no evidence that he would have been unable to obtain another job. In fact, when Plaintiff decided to search for a job in August 2002, he was offered a position at KENENTEC, Inc. where he made nearly $150,000 per year (while simultaneously receiving his monthly

9

salary from Marconi pursuant to the General Release). See Ex. A to Dhillon Decl. at 24:16-25:22, 221:15-222:25; Ex. M to Dhillon Decl.; see also Ex. 2 to Supp. Dhillon Decl. Finally, Defendants contend that Plaintiff could have quit and remained unemployed because there is no evidence that Plaintiff's spouse could not have supported him until he obtained another source of income. See Ex. A to Dhillon Decl. at 221:15-222:25; See Reply at 3.

In response to this, Plaintiff argues that any of these alternatives would have place him in serious economic hardship. However, mere conclusory allegations of economic hardship are insufficient to satisfy the second element of economic duress under California law. See Leo J. Hamel & Co. v. Breitling USA, 1996 WL 400984, at *3 (N.D. Cal. July 3, 1996) (granting summary judgment holding that plaintiff's statement that "he needed the cash" was insufficient to show that plaintiff had no reasonable alternative but to agree to the release provision); see also Rivera v. AMTRAK, 331 F.3d 1074, 1078 (9th Cir. 2003) ("Conclusory allegations unsupported by factual data cannot defeat summary judgment.").

Plaintiff has made no claim as to bankruptcy or financial ruin. Instead, Plaintiff asserts that he "estimate[s] that [his] total monthly expenses in September 2001 were approximately equal to [his] net income[]" and that "[t]he possibility of losing [his] pay from Marconi caused [him] tremendous anxiety." Osanitsch Decl. at ¶ 16. The evidence in the record demonstrates that at the time of signing and executing the General Release, Plaintiff had a net worth of over $1,000,000. (See Ex. A to Dhillon at 66:16-20). Plaintiff made more than $1,200,000 between January 1, 2000 and December 31, 2001, Id. at 221:11-14, owned a $1.1 million dollar home and had at least $150,000 worth of equity in it, Id. at 217:2-9; Osanitsch Decl. at ¶ 16, owned three cars, and Plaintiff's wife worked and contributed income. See Ex. A to Dhillon Decl. at 217:2-4; 221:15-222:25. In regards to Plaintiff's accumulated assets like savings and other financial instruments, Plaintiff refused to provide this information despite Defendants' production request during discovery. Reply at 4 n.2. (citing Supp. Dhillon Decl. at ¶ 2). Ultimately, Plaintiff has failed to provide evidence sufficient to show that his only alternative to signing the General

Release was bankruptcy or financial ruin. If this court were to hold otherwise, it would throw into doubt all contracts where one party is in some economic distress. California courts have not gone so far, and require instead that in order for economic duress to be found "the only other alternative is bankruptcy or financial ruin." Ashton, 157 Cal. App. 3d at 1159.

Because Plaintiff has failed to identify evidence sufficient to satisfy the requirements for economic duress, the General Release is valid and enforceable. In signing and executing the General Release, Plaintiff waived his right to bring this lawsuit and thus Defendants' motion for summary judgment must be granted on these grounds.

**IT IS SO ORDERED.**

Dated: December 21, 2009

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE